UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JESSICA LEIGH TOWNSEND,

                              Plaintiff,        Case # 17-CV-6742-FPG

v.                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Jessica Leigh Townsend brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") under Title XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 14. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On June 15, 2015, Townsend protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[1] 150-55. She alleged disability since May 10, 2012 due to bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder. Tr. 10, 183. On December 28, 2016, Townsend and a vocational expert ("VE") testified at a video hearing before Administrative Law Judge Roxanne Fuller ("the ALJ"). Tr. 26-61. On February 15, 2017, the ALJ issued a decision finding that Townsend was not disabled within the meaning of the Act. Tr.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

10-21.  On August 31, 2017, the Appeals Council denied Townsend's request for review.  Tr. 1-6.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

**LEGAL STANDARD**

I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

II. **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See Id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Townsend's claim for benefits under the process described above. At step one, the ALJ found that Townsend had not engaged in substantial gainful activity since the

application date. Tr. 12. At step two, the ALJ found that Townsend has depression, bipolar disorder, anxiety, and substance abuse disorder, which constitute severe impairments. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 13-14.

Next, the ALJ determined that Townsend retains the RFC to work at all exertional levels but with nonexertional limitations. Tr. 14-19. Specifically, the ALJ found that Townsend can tolerate occasional exposure to moving mechanical parts and unprotected heights; occasionally operate a motor vehicle; perform simple, routine, and repetitive tasks; work in a low stress job with only occasional decision making and work place changes; and occasionally interact with coworkers and supervisors but cannot interact with the public. Tr. 14.

At step four, the ALJ indicated that Townsend does not have past relevant work. Tr. 19. At step five, the ALJ relied on the VE's testimony and found that Townsend can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-20. Specifically, the VE testified that Townsend could work as a cleaner (at both the medium and light exertional levels), hand packager, and marker labeler. Tr. 20. Accordingly, the ALJ concluded that Townsend was not disabled under the Act. Tr. 20-21.

## II. Analysis

Townsend argues that remand is required because the ALJ made several errors that rendered the RFC assessment unsupported by substantial evidence. ECF No. 10-1 at 18-23; ECF No. 15. Specifically, Townsend asserts that the ALJ improperly (1) afforded great weight to two Global Assessment of Functioning ("GAF") scores; (2) characterized her treatment as "conservative"; (3) afforded great weight to the opinion of consultative psychologist Adam

4

Brownfeld, Ph.D.; and (4) discounted the opinions of her social worker Meghan Stich. *Id.* These arguments are addressed in turn below.

1. **GAF Scores**

Townsend first argues that that ALJ erred by giving great weight to two GAF scores.[2] ECF No. 10-1 at 19-20. In 2014, while Townsend received inpatient treatment, her GAF scores were between 51 and 60, and on May 15, 2015, Dr. Odysseus Adamides assessed a GAF score of 53 after Townsend initiated outpatient psychiatric treatment at Catholic Family Center.[3] Tr. 257, 315, 539. The ALJ afforded great weight to these scores because they indicate moderate limitations in functioning, which the ALJ found "consistent with the record." Tr. 18. Specifically, the ALJ reasoned that Dr. Adamides noted that Townsend had anxiety and depression symptoms but was also personable, articulate, and oriented, disclosed information without cognitive deficits, and had capacity for rational emotive expression within her social environment. *Id.* (citing Tr. 536-40).

It is true that courts in the Second Circuit "have noted that GAF scores are of little probative value in the disability context." *Seignious v. Colvin*, No. 6:15-CV-06065(MAT), 2016 WL 96219, at *6 (W.D.N.Y. Jan. 8, 2016). GAF scores are relevant, but they generally cannot be used to contradict a medical source's opinion that the claimant is disabled because GAF scores do "not have a direct correlation to the severity requirements in [the Commissioner's] disorders listings." *Id.* (citing *Daniel v. Astrue*, No. 10-CV-5397 (NGG), 2012 WL 3537019, at *10 (E.D.N.Y. Aug.

---

[2] Mental health professionals use GAF scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* Global Assessment of Functioning (GAF) Scale, *available at* https://www.albany.edu/counseling_center/docs/GAF.pdf (last visited Dec. 14, 2018).

[3] GAF scores between 51 and 60 indicate that Townsend had moderate symptoms (*e.g.*, flat affect, circumstantial speech, or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends or conflicts with peers or coworkers). *Id.*

5

14, 2012) (noting that a treating physician's GAF score of 55 was relevant but did not contradict his ultimate finding that the claimant was disabled)).

But the ALJ did not use Townsend's GAF scores to discount any medical opinion; rather, she used them as a single piece of evidence in her overall analysis of Townsend's RFC. *See* 20 C.F.R. § 416.945(a)(3) (noting that the ALJ assesses RFC "based on all of the relevant medical and other evidence"). Accordingly, the Court finds that the ALJ did not err by considering and affording weight to Townsend's GAF scores.

### 2. Conservative Treatment

Townsend next argues that the ALJ improperly "played doctor" by characterizing her treatment as conservative. ECF No. 10-1 at 20-21.

In determining whether a claimant is disabled, the ALJ considers all of her alleged symptoms and the extent to which they are consistent with the record evidence and affect her daily activities and ability to work. 20 C.F.R. § 416.929(a) (effective June 13, 2011 to Mar. 26, 2017); *see also* S.S.R. 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). But the claimant's statements alone will not establish disability. 20 C.F.R. § 416.929(a). Thus, the ALJ follows a two-step process when considering the claimant's alleged symptoms and how they affect her ability to work. The ALJ first considers whether the medical evidence shows an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* § 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ will consider, among other things, treatment received to relieve symptoms. *Id.* § 416.929(c)(3)(v); *see also* S.S.R. 16-3p, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016) ("[I]f

the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . [the SSA] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

Here, the ALJ followed the two-step process outlined above and found that Townsend's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 15. The ALJ later explained that, although the record demonstrated a long history of depression, bipolar disorder, post-traumatic stress disorder, and anxiety, Townsend "received only conservative treatment with psychotherapy and medication for her symptoms." Tr. 17.

Townsend asserts that the ALJ concluded that she did not receive the treatment "one would expect for a totally disabled individual." ECF No. 10-1 at 21. The Court agrees that this reasoning would have been improper, *see, e.g.*, *Martel v. Berryhill*, No. ED CV 16-1218 MRW, 2017 WL 2389973, at *3 (C.D. Cal. June 1, 2017) (noting that "the mere lay observation that an individual did not seek 'the type of treatment one would expect for a totally disabled individual' is a boilerplate, 'vague allegation' that cannot support an adverse credibility finding"),[4] but the ALJ made no such statement. Instead, the ALJ considered Townsend's conservative treatment history, along her daily activities, to discount her statements regarding her alleged symptoms, which she was entitled to do under the regulations. Tr. 17; *see* 20 C.F.R. § 416.929(c)(3)(i), (v). Thus, the

---

[4] S.S.R. 16-3p, which became effective on March 16, 2016 and applies in this case, superceded S.S.R. 96-7p and "eliminate[d] the use of the term credibility from sub-regulation policy." *Kearney v. Berryhill*, No. 1:16-CV-00652-MAT, 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018) (citation omitted). The former Ruling put a "stronger emphasis" on the ALJ's duty to make a credibility finding regarding the claimant's statements. *Id.* (citation omitted). The current Ruling makes it clear that the ALJ is not evaluating the claimant's character when she evaluates the claimant's subjective symptoms. *Id.* (citation omitted).

7

Court finds that the ALJ did not err by finding that Townsend's treatment history weighed against her disability allegations.[5]

### 3. Opinion of Consultative Examiner Dr. Brownfeld

Townsend also argues that the ALJ improperly afforded great weight to Dr. Brownfeld's opinion. ECF No. 10-1 at 21.

The SSA's regulations require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted); *see also* 20 C.F.R. § 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must consider: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6).

On September 8, 2015, Dr. Brownfeld conducted a psychiatric evaluation of Townsend. Tr. 296-99. He opined that she has an unlimited ability to follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. Tr. 298. He also opined that Townsend is mildly limited in her ability to relate adequately with others and appropriately deal with stress and is moderately limited in her ability to make appropriate decisions. *Id.*

---

[5] The ALJ also noted that Townsend told Ms. Stich in October of 2015 that she was interested in volunteering at a soup kitchen in the future but was reluctant to do so at that time because she did not want to seem able to work while her SSI appeal was pending. Tr. 16, 480. This observation further supports the ALJ's decision to discount Townsend's statements about her symptoms. *See Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965 (MAT), 2018 WL 3628253, at *8 (W.D.N.Y. July 31, 2018) (finding that the ALJ properly discounted the claimant's statements in part because the claimant "told his therapist . . . that he wanted to work but could not because it would 'ruin' his application for disability benefits").

The ALJ summarized Dr. Brownfeld's examination findings and gave his opinion "great weight." Tr. 16, 18, 296-99. In accordance with the above regulations, the ALJ found Dr. Brownfeld's opinion consistent with his examination observations.[6] Tr. 18; *see* 20 C.F.R. § 416.927(c)(3) (the ALJ will give more weight to an opinion that is supported by relevant evidence and is well explained). Specifically, the ALJ pointed out that Townsend was cooperative and had an adequate presentation at her examination, demonstrated coherent and goal-directed thought processes, and had adequate presentative and receptive languages. Tr. 18. Dr. Brownfeld also found Townsend to have a euthymic mood, full affect, and intact attention, concentration, and memory skills. *Id.* Townsend told Dr. Brownfeld that she could dress, bathe, and groom herself, cook and prepare food, clean, do laundry, manage money, and take public transportation. *Id.* She also reported grocery shopping quickly due to her anxiety. Tr. 18-19. The ALJ concluded that the above evidence was consistent with Dr. Brownfeld's opinion; however, the ALJ also noted that she found Townsend "further limited based on her other medical records and her testimony." Tr. 19.

Thus, in accordance with Dr. Brownfeld's opinion that Townsend can perform simple tasks independently, the RFC determination limited Townsend to performing only simple, routine, and repetitive tasks. The RFC determination also limited Townsend to performing low stress work with only occasional decision making and work place changes, which is consistent with Dr. Brownfeld's opinion that Townsend is mildly limited in her ability to appropriately deal with stress and moderately limited in her ability to make appropriate decisions. Finally, the ALJ limited Townsend to only occasionally interacting with coworkers and supervisors and precluded her from

---

[6] The ALJ recognized that, at the administrative hearing, Townsend's attorney called Dr. Brownfeld's opinion "internally inconsistent" because "[h]e noted significant reports of psychiatric symptoms, and then . . . had no significant findings." Tr. 18, 30. The ALJ disagreed with this assertion and instead found that Dr. Brownfeld's "clinical observations comported generally with his opinion." Tr. 18.

interacting with the public, which is supported by Dr. Brownfeld's opinion that Townsend is mildly limited in her ability to relate adequately with others. The ALJ further limited Townsend to only occasional exposure to moving mechanical parts and unprotected heights and occasionally operating a motor vehicle, even though Dr. Brownfeld did not prescribe any such limitations.

Townsend asserts that the ALJ improperly afforded great weight to Dr. Brownfeld's opinion even though it was "stale" based on "the vast evidence and change[] noted in the record since." ECF No. 10-1 at 21. It is true that a stale medical opinion does not constitute substantial evidence to support an ALJ's findings. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order). A gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion; however, such an opinion may be stale if the claimant's condition deteriorates during that time. *See, e.g.*, *Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that an opinion rendered before the "significant deterioration" of the claimant's mental status could not "constitute substantial evidence supporting the ALJ's determination"). But the record does not suggest that Townsend's condition deteriorated after Dr. Brownfeld rendered his opinion and, aside from the single statement noted above, Townsend does not argue or point to evidence demonstrating that her condition worsened.

Townsend also asserts that Dr. Brownfeld's opinion was not entitled to great weight, especially over the opinions of social worker Ms. Stich,[7] because it was based on a single examination. ECF No. 10-1 at 21. It is true that the ALJ will generally give more weight to an opinion from a medical source who has an ongoing treatment relationship with the claimant, *see*

---

[7] The Court discusses the ALJ's evaluation of Ms. Stich's opinions in the next section of this decision.

10

20 C.F.R. § 416.927(c)(2), but this is just one factor for the ALJ to consider. The ALJ may also consider whether the medical source examined the claimant, which Dr. Brownfeld did here, and whether the medical source's opinion is consistent with his examination findings, which, as discussed above, the ALJ found here. *See id.* § 416.927(c)(1), (3). Moreover, "[i]t is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

Finally, Townsend asserts, without any support, that "there is no evidence that [Dr. Brownfeld] reviewed any of [her] medical history or records." ECF No. 10-1 at 21. Although the regulations require the SSA to give the consultative examiner "any necessary background information" about the claimant's condition, *see* 20 C.F.R. § 416.917, "this language does not amount to a requirement that every consulting physician be provided with all of a claimant's medical records and history (much less a requirement that the physician report that []he viewed every, or any, document in the record)." *Johnson v. Colvin*, No. 13-CV-3745 KAM, 2015 WL 6738900, at *15 (E.D.N.Y. Nov. 4, 2015) (citation omitted), *aff'd sub nom.*, *Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580 (2d Cir. 2016) (summary order).

A complete consultative examination report includes the claimant's primary complaints, a description of the history of those complaints, examination findings, laboratory or other test results, a diagnosis and prognosis, and a statement about what the claimant can do despite her impairments. 20 C.F.R. § 416.919n(c)(1)-(6) (effective Aug. 1, 1991 to Mar. 26, 2017). Dr. Brownfeld's report complied with these requirements and there is no evidence that he did not have access to Townsend's medical records. Tr. 296-99. Thus, the Court finds no error on this basis.

Accordingly, for all the reasons stated, the Court finds that the ALJ properly weighed Dr. Brownfeld's opinion and that his opinion constitutes substantial evidence in support of the RFC assessment.

### 4. Opinions of Social Worker Ms. Stich

Finally, Townsend argues that the ALJ improperly discounted social worker Ms. Stich's opinions. ECF No. 10-1 at 21-23. A licensed clinical social worker is an "other source," rather than an "acceptable medical source," and therefore their opinions are not entitled to controlling weight. *Martino v. Comm'r of Soc. Sec.*, No. 1:17-CV-01071 EAW, 2018 WL 5118318, at *7 (W.D.N.Y. Oct. 19, 2018); *see also* 20 C.F.R. § 416.913(a), (d) (effective Sept. 3, 2013 to Mar. 26, 2017); S.S.R. 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). But evidence from "other sources," including social workers, may be based on "special knowledge" of the claimant and "provide insight" into the severity of the claimant's impairments and functional limitations. S.S.R. 06-03p, 2006 WL 2329939, at *2. When an ALJ considers how much weight to give to the opinion of an "other source," she generally considers the same factors used to weigh opinions from acceptable medical sources.[8] *See* 20 C.F.R. § 416.927(f).

An ALJ is entitled to afford little or no weight to a social worker's opinion, but she "generally should explain the weight given" to that opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." S.S.R. 06-03p, 2006 WL 2329939, at *6; *see also Canales v. Comm'r of Soc. Sec.*,

---

[8] Those factors are: (1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant and the length, nature, and extent of that relationship; (3) whether the opinion is supported by relevant evidence and is well-explained; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist opining about medical issues related to his or her area of expertise; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(1)-(6).

12

698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) ("While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision."). The ALJ cannot disregard a social worker's opinion solely because she is not an acceptable medical source. *Martino*, 2018 WL 5118318, at *7 (citation omitted).

In June of 2015, Ms. Stich opined that Townsend has an unlimited ability to follow, understand, and remember simple instructions and directions, maintain basic standards of hygiene and grooming, and perform low stress and simple tasks; is moderately limited in her ability to perform simple and complex tasks independently, regularly attend to a routine, and maintain a schedule; and is very limited in her ability to maintain attention and concentration for rote tasks. Tr. 216.

In November of 2015, Ms. Stich opined that Townsend has an unlimited ability to maintain basic standards of hygiene and grooming and is moderately limited in her ability to follow, understand, and remember simple instructions and directions; perform simple and complex tasks independently; maintain attention and concentration for rote tasks; regularly attend to a routine and maintain a schedule; and perform low stress and simple tasks. Tr. 711. Ms. Stich rendered an identical opinion in April of 2016, except she opined that Townsend has an unlimited ability to perform low stress and simple tasks and is "permanently disabled." Tr. 231-32.

In December of 2016, Ms. Stich opined that Townsend has mild limitation in her ability to remember work-like procedures; understand and remember very short and simple instructions; maintain regular attendance, be punctual, and sustain an ordinary routine; perform at a consistent pace; accept instructions and respond appropriately to criticism; get along with coworkers or peers; and respond appropriately to workplace changes. Tr. 628-29. Ms. Stich also opined that Townsend has moderate limitation in her ability to understand, remember, and carry out detailed

instructions; work with others without being unduly distracted; interact appropriately with the public; travel to unfamiliar places or use public transportation; and deal with normal work stress. *Id.* She further opined that Townsend is markedly limited in her ability to maintain attention for two-hour segments and complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 628. Ms. Stich indicated that Townsend would be off task for 20% of an eight-hour workday and absent from work four days per month. Tr. 629-30.

The ALJ summarized these opinions and afforded them "little weight." In accordance with the regulations, she discounted Ms. Stich's opinions as inconsistent with each other and with the record. Tr. 17-18; *see* 20 C.F.R. § 416.927(c)(3), (4) (the ALJ will give more weight to opinions that are well-supported and consistent with the record as a whole). The ALJ explained that Townsend "struggled with anxiety and with interacting with people that she did not know," but that "her anxiety was generally situational in nature, and waxed and waned depending on circumstances in her life." Tr. 18. The ALJ noted that Townsend's "anxiety increased with ordinary stressors such as financial difficulty or raising her daughter" and that "her speech, thought processes, thought content, and cognition were always normal." *Id.* (citing Tr. 391-535, 542-625). Moreover, Townsend "attended her counseling appointments on time, despite having transportation issues and a young child to care for." *Id.* (citing Tr. 542-625). The ALJ concluded that "this evidence is inconsistent with much of Ms. Stich's opinions regarding [Townsend]'s limitations." Tr. 18.

Although Townsend asserts that the ALJ failed to explain why she rejected Ms. Stich's opinion (ECF No. 10-1 at 22), the ALJ set forth a detailed explanation that cites the record and accords with the regulatory factors for weighing opinion evidence. Moreover, even though the

14

ALJ discounted Ms. Stich's assessments, much of the RFC determination is consistent with Ms. Stich's findings.

Specifically, the RFC determination that Townsend can perform simple, routine, and repetitive tasks is supported by Ms. Stich's June 2015 and April 2016 opinions that Townsend has an unlimited ability to perform simple tasks. Tr. 14, 216, 231. The finding that Townsend must work in a low stress job with only occasional decision making and workplace changes is supported by Ms. Stich's June 2015 and April 2016 opinions that Townsend has an unlimited ability to perform low stress tasks, and her December 2016 opinion that Townsend has mild limitation in her ability to respond appropriately to workplace changes and moderate limitation in her ability to deal with normal work stress. Tr. 14, 216, 231, 629. The determination that Townsend can occasionally interact with coworkers and supervisors is supported by Ms. Stich's December 2016 opinion that Townsend has mild limitation in her ability to accept instructions, respond appropriately to criticism, and get along with coworkers or peers and moderate limitation in her ability to work with others without being unduly distracted. Tr. 14, 628-29. Finally, the finding that Townsend cannot interact with the public is supported by Ms. Stich's December 2016 opinion that Townsend has moderate limitation in her ability to interact appropriately with the public. Tr. 14, 629.

Lastly, Townsend asserts that the ALJ "mischaracterized" the record when she described her anxiety as situational because the record contains "ongoing reports of nightmares, flashbacks, hypervigilance, avoidance of places and times, difficulty being around others, difficulty with concentration, the need to distract herself, and clinical presentation of loud speech and hypomanic mood." ECF No. 10-1 at 22-23; ECF No. 15 at 2-3. Although the record contains such findings, *see, e.g.*, Tr. 314, 514, 520, 522, 578, 603-04, it also reveals, as the ALJ pointed out, that Townsend

15

regularly had normal thought processes, thought content, and cognition and that situational triggers—like her finances, managing her daughter, poor transportation, and issues with the father of her child—often increased her stress and anxiety. *See, e.g.*, Tr. 392, 417, 429-30, 448, 480, 482, 485, 491, 494, 498, 504, 505, 508, 514, 619. It was the ALJ's obligation—and is not the duty of this Court—to resolve this conflicting evidence when she made the RFC determination. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

Accordingly, for all the reasons stated, the Court finds that the ALJ properly analyzed social worker Ms. Stich's opinion.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 20, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court